**Margaret BECKER, Plaintiff–Appellant,**

v.

**OPTICAL RADIATION CORPORATION, Defendant–Appellee.**

**No. 1470, Docket 94–9204.**

United States Court of Appeals, Second Circuit.

Argued June 8, 1995.

Decided Sept. 12, 1995.

Morton H. Feder, Mineola, NY (Feder, Connick & Goldstein, of counsel), for plaintiff-appellant.

Allen M. Hecht, New York City (James T. Conlon, Sedgwick, Detert, Moran & Arnold, of counsel), for defendant-appellee.

Before: OAKES, MINER and LEVAL, Circuit Judges.

OAKES, Senior Circuit Judge:

Margaret Becker appeals from an order of the United States District Court for the Eastern District of New York, Carol Bagley Amon, *Judge,* granting summary judgment for defendant Optical Radiation Corporation ("Optical") on the grounds that Becker's state law claims of defective design, defective manufacture, failure to warn, and failure to test were preempted by the Medical Device Amendments of 1976 (the "MDA") to the Food, Drug, & Cosmetic Act, 21 U.S.C. § 360k.

We affirm.

Optical designs and manufactures an intraocular lens (IOL) called the Stableflex lens which is a prosthetic device implanted in cataract patients to replace the natural lens of the eye. On March 24, 1984, Becker had a Stableflex lens implanted in her right eye to correct a cataract that severely impaired her vision. At the time of Becker's surgery, the Stableflex lens was an experimental device. With the approval of the United States Food and Drug Administration ("FDA"), Optical was conducting a clinical investigation to assess the risks and benefits of the lens in the treatment of cataracts. Becker's surgeon, Dr. Harold Spalter, a professor in clinical ophthalmology at Columbia University College of Physicians and Surgeons and an attending ophthalmologist at Columbia Presbyterian Medical Center, was an approved "investigator" in the study.

Although at the time of her operation Becker signed two consent forms, she maintains that she was unaware that a Stableflex lens had been implanted in her eye until years after the surgery. The consent forms that she signed gave the doctor permission to administer anaesthesia and to perform a "CATARACT EXTRACTION WITH AN IOL IMPLANT O.D." The forms did not mention the experimental nature of the surgery, and, according to Becker, she was never advised that her operation was part of a study.

Five years after the operation, in mid–1989, Becker began to notice a blurring in her right eye. She consulted three doctors, and the third diagnosed and began treating her for a detached retina. None of the three doctors suspected that her complaints were related to the implanted lens. In the summer of 1991, Becker read an article which suggested that her ailments might be related to the lens. She requested further information from a doctor mentioned in the article, and sent him a copy of her post-surgery report. The doctor, Michael S. Insler, M.D., responded, informing Becker that a Stableflex lens had been implanted in her eye.

Becker filed a complaint against Optical in Nassau County Supreme Court setting forth a number of state law claims, based in strict liability and negligence, for defective design, defective manufacture, failure to warn and failure to test the Stableflex lens. On May 21, 1992, the case was removed to the United States District Court for the Eastern District of New York. Optical filed an answer on May 28, 1992, which included, *inter alia,* the affirmative defenses that Becker's claims were barred by the statute of limitations and by the doctrine of preemption. On July 16, 1993, Becker moved under the Federal Rules of Civil Procedure 12 and 56 to strike those affirmative defenses. Optical cross-moved for summary judgment pursuant to Rule 56 on the grounds that Becker's claims were preempted by the MDA. On October 26, 1994, the district court granted summary judgment in favor of Optical.[1]

Becker's main argument on appeal is that her state tort claims are not preempted because Optical and Dr. Spalter failed to comply with certain requirements of the federal regulations issued pursuant to the MDA governing the experimental use of IOLs. As Becker phrased her argument: "If the distributor [Optical] does not comply with the Federal mandate, then the State may act (including damage verdicts in its courts) as it deems appropriate." Becker's Brief at 5–6.

Title 21, section 360k(a) explicitly addresses the MDA's preemption of state law. It states, in relevant part:

---

1. The court, therefore, did not reach the motion to strike the affirmative defenses.

[N]o State ... may establish ... with respect to a [medical] device intended for human use any requirement—(1) which is different from, or in addition to, any requirement applicable under this chapter to the device, and (2) which relates to the safety or effectiveness of the device....

21 U.S.C. § 360k(a) (1988). As Becker's state tort claims all "relate to the safety or effectiveness" of the Stableflex lens, the question we must address is whether the state common law creates "requirements" that are "different from" or "in addition to" those imposed by the MDA.[2]

The MDA sets forth various requirements concerning the safety and effectiveness of medical devices and the approvals which must be obtained from the FDA before a device enters the marketplace. *Id.* §§ 360c *et seq.* The MDA also creates an exemption from these requirements for certain experimental devices. *Id.* § 360j(g) (1988). Pursuant to this section of the MDA, the FDA has issued specific regulations governing the development of intraocular lenses. 21 CFR § 813 *et seq.* (1994) (the "IOL Regulations"). In order for a manufacturer of IOLs to receive an exemption, the regulations require that the manufacturer submit to the FDA a detailed application describing the lens and the proposed study. *Id.* §§ 813.20, 813.30. After the study is approved, an institutional review committee of the FDA monitors the experiment. *Id.* § 813.65. The IOL Regulations broadly govern nearly all facets of the investigational program. *See Gile,* 22 F.3d at 542.

Becker argues that the Stableflex lens which was implanted in her eye was not "exempt" under the experimental device section of the MDA because Dr. Spalter failed to secure her informed consent before implanting the lens. Becker cites 21 CFR § 813.5, which arguably provides that a shipment of IOL lenses is not exempt from the general MDA requirements unless the investigator (in this case, Dr. Spalter) has obtained the informed consent of the patient.

It may well be that the lens in question was not exempt from the general requirements of the MDA, but we find that whether the lens was exempt or not, Becker's state tort claims are preempted by the MDA.

If the lens were not exempt, it was, thus, subject to the general requirements of the MDA. The MDA requires medical devices to be submitted to the FDA for premarket approval. At the premarket stage, pursuant to the MDA, the FDA reviews a device's testing, design specifications, intended use, manufacturing method, performance standards and labeling, and decides whether the device is safe and effective. 21 U.S.C. §§ 360e(c)(1), (2). Becker's claims allege defective design, defective manufacture, failure to warn and failure to test.[3] If Becker were allowed to pursue these claims, and if she were successful, the common law of New York would impermissibly add requirements in the areas reviewed in the premarket approval process, and thus would impose standards on the IOL which are different from those of the MDA. *Reeves v. AcroMed Corp.,* 44 F.3d 300, 304 (5th Cir.) (common law failure-to-warn claims would impose labeling requirements beyond those required by the MDA and are thus preempted), *cert. denied,* — U.S. —, 115 S.Ct. 2251, 132 L.Ed.2d 258 (1995); *Martello v. Ciba Vision Corp.,* 42 F.3d 1167, 1168–69 (8th Cir.1994) (state tort claims of strict liability, breach of express and implied warranties, and negligence relating to design, inspection, instructions, labeling, warning and testing are preempted by the MDA), *cert. denied,* — U.S. —, 115 S.Ct. 2614, 132 L.Ed.2d 857 (1995); *Stamps,* 984 F.2d at 1420–1425 (state law tort claims for defective design, inadequate warnings and negligent failure to warn

---

2. It is now well established that a "requirement" for purposes of the preemption provision of the MDA may be created by state common law as well as by statutory law. *See Gile v. Optical Radiation Corp.,* 22 F.3d 540, 542 (3d Cir.), *cert. denied,* — U.S. —, 115 S.Ct. 429, 130 L.Ed.2d 342 (1994); *Stamps v. Collagen Corp.,* 984 F.2d 1416, 1421 (5th Cir.), *cert. denied,* — U.S. —, 114 S.Ct. 86, 126 L.Ed.2d 54 (1993); *King v.*

*Collagen Corp.,* 983 F.2d 1130, 1134–35 (1st Cir.), *cert. denied,* — U.S. —, 114 S.Ct. 84, 126 L.Ed.2d 52 (1993).

3. We note that Becker has not brought a claim for failure to obtain her informed consent to the procedure.

are preempted by the MDA); *King,* 983 F.2d at 1135–36 (state tort claims for strict liability, negligent design, manufacture, marketing and sale, misbranding, misrepresentation and failure to warn are preempted by the MDA).

If, on the other hand, the lens were exempt, Becker's claims are also preempted because the MDA and the IOL Regulations specifically exempt experimental IOLs from the safety and effectiveness standards usually imposed on medical devices. 21 C.F.R. § 813.5. While the FDA's regulations impose no requirements concerning the design of IOLs, the FDA can hardly be expected to specify the safe and effective design of a device when it is still experimental. The point of the experiment is to find out *whether* the design is safe and effective. *See Slater v. Optical Radiation Corp.,* 961 F.2d 1330, 1333 (7th Cir.), *cert. denied,* — U.S. —, 113 S.Ct. 327, 121 L.Ed.2d 246 (1992). The MDA and the IOL Regulations set forth detailed procedures for determining whether IOLs are safe and effective. Becker's state tort claims would impose requirements on the IOLs that are, certainly, additional to those imposed by the MDA scheme. *See Gile,* 22 F.3d at 542–44 (common law claims challenging the design of the Stableflex lens and the warnings that accompany it are preempted by the MDA); *Duncan v. Iolab Corp.,* 12 F.3d 194, 195 (11th Cir.1994) (state law claims for negligence, strict liability and breach of implied warranty relating to an IOL preempted by the MDA); *Slater,* 961 F.2d at 1333–34 (state claim for defective design of a Stableflex lens preempted by MDA).

We note that the First Circuit has similarly recently so held in *Talbott v. C.R. Bard, Inc.,* 63 F.3d 25 (1st Cir.1995).

AFFIRMED.