Paul **BERISH**, Plaintiff,

v.

**RICHARDS MEDICAL COMPANY, n/k/a Smith & Nephew Richards, Inc.,** Defendant.

No. 94–CV–1376.

United States District Court, N.D. New York.

June 21, 1996.

Mainetti, Mainetti Law Firm, Kingston, NY (Marino D'Orazio, of counsel), for plaintiff.

Schneck, Weltman Law Firm, New York City (Glenn S. Kerner, of counsel), for defendant.

**MEMORANDUM–DECISION & ORDER**

McAVOY, Chief Judge.

**I. BACKGROUND**

The plaintiff, PAUL BERISH, commenced this action against the defendant, SMITH & NEPHEW RICHARDS, INC., in the New York State Supreme Court, Ulster County, on or about September 30, 1994. The plaintiff alleges claims sounding in negligence, strict products liability, and breach of express and implied warranties. These claims are made in relation to an allegedly defective femoral stem, a part of the Opti–Fix Total Hip System hip replacement device, that was implanted into the plaintiff's left hip on or about May 4, 1987.

On or about October 24, 1994, the defendant removed the action to this Court. Jurisdiction is based on diversity of citizenship. The defendant filed an Answer on November 21, 1994. The defendant filed the present motion with the Court on May 20, 1996, and such motion was ordered sealed at the parties' request on May 23, 1995.

The defendant has moved for summary judgment against the plaintiff, dismissing the Complaint in its entirety, on the grounds that all of the plaintiff's claims are barred by the doctrine of federal preemption. The defendant also seeks summary judgment as to the breach of express warranty claim on the basis that the plaintiff has failed to raise a material factual issue as to that claim. The plaintiff, of course, disagrees.

**A. Facts Relating To The Plaintiff's Alleged Injuries**

The plaintiff alleges that he was implanted with a prosthetic hip replacement device, manufactured by the defendant on May 4, 1987, as treatment for a degenerative bone condition. Records show that the device was implanted without the use of bone cement.[1] The device was apparently designed for use with or without bone cement, but was at different stages of FDA approval with respect to each use.

Apparently, on or about December 19, 1993, the plaintiff experienced a fracture of the femoral stem of the hip prosthesis. Shortly thereafter, the plaintiff's prosthetic hip device was replaced. The plaintiff then filed the instant lawsuit.

**B. Facts Relating To The Device At Issue**

In brief, the defendant has pursued a number of procedural measures in an attempt to secure FDA approval for the marketing of the prosthetic device at issue in this case.

---

1. The device's femoral stem was in some respect porous, so that the bone would grow securely into and around the device, obviating the need for bone cement. This is called "biological ingrowth."

The defendant submitted a so-called 510(k) Notification to the FDA stating its intent to market the hip replacement system. The 510(k) Notification permits a manufacturer to bring a device to market by demonstrating to the FDA that the device is "substantially equivalent" to one on that was on the market prior to the 1976 Medical Device Act's ("MDA") enactment. The FDA found that the defendant's device/system was substantially equivalent to other devices on the market prior to 1976, and accordingly, granted permission to the defendant to market the device subject to the general provisions of the Federal Food, Drug, and Cosmetic Act ("FDCA") and certain other controls. The May 14, 1986, letter notification from the FDA to the defendant stated that "non-cement fixation of [the] device is considered investigational and may only be investigated as a significant risk device in accordance with the investigational device exception ("IDE") regulation under 21 CFR, Part 812."

On November 7, 1986, the defendant applied to the FDA for an IDE in relation to the hip replacement prosthesis system for use without bone cement. Allegedly, the FDA gave its approval for such use of the prosthetic system on or about March 27, 1987. Subsequent to the plaintiff's operation, and on March 23, 1991, the defendant submitted a 510(k) Notification to the FDA stating its intent to market the prosthetic hip system for use without bone cement. The 510(k) Notification noted the IDE covering the system's non-cement usage.

The plaintiff argues that there is a question of fact as to whether the device at issue was subject to an IDE at the time of the surgery on May 4, 1987, and whether it is preempted by the MDA. However, the plaintiff argues that factual issues about the defendant's manufacturing process preclude the grant of defendant's summary judgment motion before even reaching the preemption issues. The Court now turns to the issues raised.

## II. DISCUSSION

### A. Standard For Summary Judgment

■ The standard for summary judgment is well-settled. A party seeking summary judgment must demonstrate that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party bears the initial burden of "informing the ... court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986), quoting, Fed.R.Civ.P. 56(c). The initial burden is to demonstrate "that there is an absence of evidence to support the nonmoving party's case." Id. at 325, 106 S.Ct. at 2554.

■ The nonmoving party may defeat the summary judgment motion by producing sufficient evidence to establish a genuine issue of material fact for trial. See Id. at 322, 106 S.Ct. at 2552. The test for existence of a genuine dispute is whether a reasonable juror could find for the nonmoving party; that is, whether the nonmovant's case, if proved at trial, would be sufficient to survive a motion for judgment as a matter of law. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250–51, 106 S.Ct. 2505, 2511–12, 91 L.Ed.2d 202 (1986).

■ In ruling on a motion for summary judgment, a Court is required to resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party. See Donahue v. Windsor Locks Bd. of Fire Comm'rs., 834 F.2d 54, 57 (2d Cir.1987). The nonmoving party, however, "must do more than simply show that there is some metaphysical doubt as to material facts." Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Indeed, the nonmoving party's opposition may not rest on mere allegations or denials of the moving party's pleading, but "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). "The non-movant cannot escape summary judgment merely by vaguely asserting the existence of some unspecified disputed material

facts, or defeat the motion through mere speculation or conjecture." *Western World Ins. Co. v. Stack Oil, Inc.,* 922 F.2d 118, 121 (2d Cir.1990) (citations and quotations omitted). With these standards in mind, the Court now turns to the issues presented.

## B. Preemption As To The Strict Products Liability Claim And The Negligent Design Claim

### 1. *Legal standards relating to preemption*

 Federal law is "... the supreme Law of the Land; and [ ] the judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State notwithstanding." U.S. Const. art. VI, cl. 2. Accordingly, any state law that conflicts with federal law may be preempted. *Malone v. White Motor Corp.,* 435 U.S. 497, 504–05, 98 S.Ct. 1185, 1189–90, 55 L.Ed.2d 443 (1978). However, state law will not be preempted unless preemption "was the clear and manifest purpose of Congress." *Rice v. Santa Fe Elevator Corp.,* 331 U.S. 218, 230, 67 S.Ct. 1146, 1152, 91 L.Ed. 1447 (1947). Congress may express its intent to preempt state law in two ways: (1) *implicitly,* by passing a statutory scheme that fully occupies the relevant field of regulation, *Fidelity Fed. Sav. & Loan Ass'n v. de la Cuesta,* 458 U.S. 141, 153, 102 S.Ct. 3014, 3022, 73 L.Ed.2d 664 (1982), or (2) *expressly,* by stating its intent to preempt in the language of a statute. *Jones v. Rath Packing Co.,* 430 U.S. 519, 525, 97 S.Ct. 1305, 1309–10, 51 L.Ed.2d 604 (1977).

 Congress expressed its intent to preempt state law by enacting the MDA, the statute at issue in this analysis, by stating:

[N]o State or political subdivision of a State may establish or continue in effect with respect to a device intended for human use any requirement—(1) which is different from, or in addition to, any requirement applicable under this Act to the device, and (2) which relates to the safety or effectiveness of the device or to any other matter included in a requirement applicable to the device under this Act.

21 U.S.C. § 360k(a). Moreover, under the MDA, medical device manufacturers must register each device with the FDA before beginning manufacture. *Martello v. Ciba Vision Corporation,* 42 F.3d 1167, 1168 (8th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 2614, 132 L.Ed.2d 857 (1995); 21 U.S.C. § 360c. "After registration, the FDA classifies each device according to the level of regulatory control necessary to provide for the device's safety and effectiveness." *Martello,* 42 F.3d at 1168. Class I devices present the least risk of harm and are the most loosely regulated; Class II devices are more heavily regulated; and Class III devices, such as the Ligament, are the most heavily regulated and must pass premarket approval. *See id.;* 21 U.S.C. § 360c(a)(1). When a device has been approved, the manufacturer must maintain certain records and continue to report to the FDA about the device. *See* 21 U.S.C. § 360i. Thus, it is clear that the MDA preempts state law as to certain medical devices.

 It is also clear that what is meant by "State ... requirement" in 21 U.S.C. § 360k(a) is "... any requirement with respect to a medical device intended for human use having the force and effect of law (whether established by statute, ordinance, regulation, or court decision), ..." 21 C.F.R. § 808.1(b). The Second Circuit, in *Becker v. Optical Radiation Corp.,* 66 F.3d 18 (2d Cir. 1995), recognized that "[i]t" is now well established that a "requirement" for purposes of the preemption provision of the MDA may be created by state common law as well as by statutory law. *Id.* at 19 n. 2, *citing, Gile v. Optical Radiation Corp.,* 22 F.3d 540, 542 (3d Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 429, 130 L.Ed.2d 342 (1994); *Stamps v. Collagen Corp.,* 984 F.2d 1416, 1421 (5th Cir.), *cert. denied,* 510 U.S. 824, 114 S.Ct. 86, 126 L.Ed.2d 54 (1993); *King v. Collagen Corp.,* 983 F.2d 1130, 1134–35 (1st Cir.), *cert. denied,* 510 U.S. 824, 114 S.Ct. 84, 126 L.Ed.2d 52 (1993). Accordingly, the *Becker* Court cited with favor, *Martello,* 42 F.3d at 1168–69. *Martello* held that state tort claims of strict liability, breach of express and implied warranties, and negligence relating to design, inspection, instructions, labeling, warning and testing are preempted by the MDA. *Id.*

Thus, if the plaintiff states claims relating to a medical device that, at the time of the events precipitating this lawsuit, was governed by the MDA, such claims are preempted by the MDA, and must be dismissed.

### 2. Preemption as to the Opti–Fix Total Hip System

■ The pivotal issue before the Court as to this issue is whether the Court can say as a matter of law that the Opti–Fix Total Hip System, that was implanted in the plaintiff's hip, was a medical device governed by the MDA and its related regulations, at the time of the plaintiff's surgery. The plaintiff argues that the device was not exempt from the general requirements of the MDA, and thus the plaintiff's claims are not exempted.

In support of the plaintiff's argument, it is suggested by the plaintiff that the Second Circuit, in *Becker v. Optical Radiation Corp.*, would require the informed consent of a patient before permitting a medical device to be considered exempt. Memorandum of Law in Opposition to Motion at 15–16. In fact, the *Becker* Court held that whether exempt from the general requirements of the MDA or not, "... the state tort claims are preempted by the MDA." 66 F.3d at 20. The lack of informed consent was immaterial. The *Becker* decision is dispositive of this case.[2]

> If the [medical device was] not exempt, it was, thus, subject to the general requirements of the MDA. The MDA requires medical devices to be submitted to the FDA for premarket approval. At the premarket stage, pursuant to the MDA, the FDA reviews a device's testing, design specifications, intended use, manufacturing method, performance standards and labeling, and decides whether the device is safe and effective. 21 U.S.C. §§ 360e(c)(1), (2). [The plaintiff's] claims allege defective design [and] defective manufacture ... If

[the plaintiff] were allowed to pursue these claims, and if [he] were successful, the common law of New York would impermissibly add requirements in the areas reviewed in the premarket approval process, and thus would impose standards on the [medical device] which are different from those of the MDA. *Reeves v. AcroMed Corp.*, 44 F.3d 300, 304 (5th Cir.) (common law failure-to-warn claims would impose labeling requirements beyond those required by the MDA and are thus preempted), *cert. denied*, —— U.S. ——, 115 S.Ct. 2251, 132 L.Ed.2d 258 (1995); *Martello v. Ciba Vision Corp.*, 42 F.3d 1167, 1168–69 (8th Cir.1994) (state tort claims of strict liability, breach of express and implied warranties, and negligence relating to design, inspection, instructions, labeling, warning and testing are preempted by the MDA), *cert. denied*, —— U.S. ——, 115 S.Ct. 2614, 132 L.Ed.2d 857 (1995); *Stamps*, 984 F.2d at 1420–1425 (state law tort claims for defective design, inadequate warnings and negligent failure to warn are preempted by the MDA); *King v. Collagen Corp.*, 983 F.2d 1130, 1134–35 (1st Cir.), *cert. denied*, 510 U.S. 824, 114 S.Ct. 84, 126 L.Ed.2d 52 (1993) (state tort claims for strict liability, negligent design, manufacture, marketing and sale, misbranding, misrepresentation and failure to warn are preempted by the MDA).

Thus, based on *Becker*, if the device at issue was under an IDE, the state tort claims are preempted. Moreover, even if the device is not subject to an IDE, and was a Class III device, it is subject to the MDA and state tort claims are preempted. However, in this case, it is clear that the prosthetic hip system at issue was subject to an IDE as a matter of law, and thus the Court finds that the state tort claims are preempted.

■ The plaintiff concedes that the defendant received IDE approval prior to the

---

**2.** The plaintiff properly has conceded the binding effect of *Becker* and *LaMontagne v. E.I. Du Pont De Nemours*, 41 F.3d 846 (2d Cir.1994). However, *LaMontagne* is not applicable to this case.

The plaintiff states that "[i]n affirming *LaMontagne*, the Second circuit [sic] has thus specifically held that without regulations *specific* to the device federal preemption will not apply."

Memorandum of Law in Opposition to Motion at 12 (underline in Memorandum). However, the *LaMontagne* Court specifically held only that the defendant did not have a duty of care or a duty to warn the plaintiff. *See LaMontagne*, 41 F.3d at 860. The Court did not address the issue of preemption. Therefore, *LaMontagne* is of no precedential value to this case.

plaintiff's surgery. The plaintiff's surgery was on May 5, 1987, roughly one month after IDE approval. IDE approval was received on or about April 2, 1987. In the approval letter, the FDA states that the device was "conditionally approved" for investigative use at certain medical facilities. Concededly, the doctor who implanted the device in the plaintiff was not working at an approved medical facility. However, the doctor, Dr. Moscowitz, has stated in his affidavit that the device was implanted without cement pursuant to his own professional "medical judgment at the time, and the medical condition of [the plaintiff]," not at the direction of the defendant. Moscowitz Aff. at ¶ 4. Moreover, the doctor was, by his own admission, told only "that the device was *designed* to be implanted with or without cement." Id. at ¶ 6 (emphasis added).

The plaintiff attempts to persuade the Court that if the doctor who performed the procedure was not part of an IDE test study, the device is not subject to an IDE, in effect, and the claims are not preempted. There simply is no support for this contention. To the contrary, as noted in *Dawson v. Howmedica, Inc.*:

> [t]he fact that plaintiff's surgeon ... was not an authorized clinical investigator, but rather in his medical judgment engaged in a legal "off-label" use of the device for cementless implant during the IDE period, does not change the analysis. [The doctor's] use of the device is not the focus. Rather, the focus must be upon the extensive federal requirements to which the [medical device] had been subjected and the fact that plaintiffs' claims would establish state requirements different from or in addition to those extensive federal requirements. To focus on [the doctor's] use of the experimental device would improperly inject the manufacturer into a potential dispute between doctor and patient.

886 F.Supp. 1402, 1407–08 n. 8 (E.D.Tenn. 1995). The plaintiff offers no other evidence that might tend to show that the medical device in question was not approved for an IDE at the time of the plaintiff's surgery. Accordingly, the plaintiff's state law tort claims sounding in strict products liability and negligent design are preempted by federal law, and must be dismissed.

## C. Preemption As To Plaintiff's Negligent Manufacture Claim

The plaintiff argues that the defendant was negligent in its manufacturing of the plaintiff's hip replacement prosthesis. In the Complaint, and in the opposition papers relating to this motion, the plaintiff sets forth factual evidence of negligent manufacture. A number of internal standards of the defendant allegedly were not followed. In addition, the defendant's internal records indicate that 87 out of 87 femoral components tested failed tensile strength test, yet were approved for use.

The plaintiff argues that if there is a material factual issue as to whether the defendant negligently manufactured the hip replacement device the Court should not even reach the preemption issue. The plaintiff is incorrect. However, the Court must consider whether the specific claim of negligent manufacture is preempted by federal law.

Without discussion, the Court in *Reiter v. Zimmer, Inc.*, held that a plaintiff's claim of negligent manufacture of a hip prosthesis was not preempted by the MDA or the FDCA, notwithstanding the fact that the plaintiff's liability claims were held to be preempted. 830 F.Supp. 199, 204 (S.D.N.Y. 1993) (stating need for further discovery), *see, also, Estate of LeMay v. Eli Lilly & Co.*, 881 F.Supp. 428 (E.D.Wis.1995) (claim for negligent manufacturing, insofar as it sought to redress noncompliance with federal regulations, was not preempted). Other courts have found the negligent manufacture claims to be preempted, but only as to Class III devices that were subject to premarket approval regulations. *See, e.g., Richman v. W.L. Gore & Associates, Inc.*, 881 F.Supp. 895, 901 (S.D.N.Y.1995). The courts that have so ruled have reasoned that "the extensive, premarket regulatory scheme applicable to Class III devices, because of the devices' 'potential unreasonable risk of illness or injury,' imposes requirements relating to design and manufacture that would preempt state claims relating to the same." *Elbert v. Howmedica, Inc.*, 841 F.Supp. 327, 330

(D.Hawaii 1993), *citing, Stamps, supra,* at 1421; *King, supra,* at 1138. The device at issue herein was investigational.

"Devices classified as 'investigational' are subject to an exemption from the usual requirements relating to the safety and efficacy of a medical device before it can be sold." *Elbert, supra,* at 330–331, *citing,* 21 U.S.C. § 360j. "[T]he FDA imposes strict requirements regarding design, manufacture, and safety, preempting states from passing laws, whether court or legislature initiated, affecting such requirements." *Id.* at 331, *citing, Slater v. Optical Radiation Corp.,* 961 F.2d 1330, 1332 (7th Cir.1992). The IDE approval letter references 21 C.F.R. § 812, *et seq.* That Part of the C.F.R. sets forth, *inter alia,* general provisions relating to IDE's, 21 C.F.R. § 812.1–812.19, the IDE application and approval process, 21 C.F.R. § 812.20–812.38, and regulations relating to FDA investigations, monitoring, record keeping, and disciplining of IDE approved device manufacturers and marketers, 21 C.F.R. § 812.40–812.150. *See, e.g.,* 21 C.F.R. § 812.60 (composition and duties of institutional review board); 21 C.F.R. § 812.100 (responsibilities of investigators); 21 C.F.R. § 812.145 (inspections); 21 C.F.R. § 812.150(a)(4) (deviations from investigational plan); 21 C.F.R. § 812.150(b)(2) (withdrawal of IRB approval).

In this case, at the time of the plaintiff's surgery, the device at issue was neither a Class II nor a Class III device, but rather investigational. Thus, it clearly does not fall within the line of cases that have decided the issue in accordance with *Richman.* However, based on the above discussion, this Court finds that, despite the absence of Class II or Class III approval at the time of the surgery,[3] substantial FDA regulations relating to the design, manufacture, and safety have been shown to apply to the device. A complex structure was set forth to monitor, investigate, record, and, if necessary sanction with withdrawal medical devices granted an IDE. Accordingly, the plaintiff's claim of negligent manufacture is preempted, as it is clear that there was federal law in conflict

with state law and Congress had "filled the field." *Fidelity Fed. Sav. & Loan Ass'n,* 458 U.S. at 153, 102 S.Ct. at 3022 (1982). Therefore, the defendant's motion for summary judgment is granted.

### D. Breach Of Implied And Express Warranties

 The plaintiff set forth no facts to support a breach of an implied or express warranty relating to the medical device at issue in this case. As to implied warranties specifically, "courts have uniformly held that implied warranty of merchantability claims are preempted." *Mastrangelo v. Howmedica,* 903 F.Supp. 439, 443 (E.D.N.Y.1995) (citation omitted)[4]. Moreover, although a "claim for breach of express warranty may survive preemption," the express warranty must be "created by a seller's affirmative act that becomes a basis of the bargain." *Id.* No such facts are set forth. Accordingly, the Court must dismiss the plaintiff's claims sounding in breach of implied and express warranty.

### III. CONCLUSION

For the foregoing reasons, the defendant's motion for summary judgment is GRANTED in all respects, and all claims are dismissed on the basis of federal preemption and/or lack of material factual issue.

**IT IS SO ORDERED.**

---

**3.** Class II approval was granted by the FDA in 1993.

**4.** Despite the fact that the plaintiff alleged negligent design and manufacture claims, the evidence in the record ostensibly supported defect in the design claim only.