**Paul BERISH, Plaintiff,**

v.

**RICHARDS MEDICAL COMPANY, n/k/a Smith & Nephew Richards, Inc., Defendant.**

No. 94–CV–1376.

United States District Court, N.D. New York.

Aug. 22, 1996.

Mainetti, Mainetti Law Firm, Kingston, NY (Marino D'Orazio, of counsel), for plaintiff.

Schneck, Weltman Law Firm, New York City (Glenn S. Kerner, Joanne Gray, Edward Weltman, of counsel), for defendant.

## MEMORANDUM–DECISION & ORDER

McAVOY, Chief Judge.

## I. BACKGROUND

This action was commenced on or before September 30, 1994, in New York state Supreme Court. The defendant removed the action to this Court on or about October 24, 1994, and filed an Answer on November 21, 1994. On May 20, 1996, the defendant filed a motion for summary judgment. By a Memorandum–Decision and Order, dated June 20, 1996, this Court granted the defendant's mo-

tion in its entirety dismissing the plaintiff's Complaint. The plaintiff now moves for reconsideration of the June 20, 1996 Memorandum–Decision and Order.

Although not specific as to the claims affected, the plaintiff argues that the Supreme Court's decision in *Medtronic, Inc. v. Lohr*, — U.S. ——, 116 S.Ct. 2240, 135 L.Ed.2d 700 (1996) mandates that this Court reconsider its June 20, 1996 Memorandum–Decision and Order and deny the defendant's motion for summary judgment. More specifically, the plaintiff argues that *Lohr* "... broadened the ability of injured plaintiffs to bring tort actions based on allegedly defective medical devices." *See* Memorandum of Law in Support of Motion at 1. Moreover, the plaintiff argues that after *Lohr* pre-emption under the Medical Device Amendments of 1976 (MDA) can occur only if "... a particular state requirement threatens to interfere with a specific federal interest." *Lohr*, — U.S. at ——, 116 S.Ct. at 2257.

The defendant, on the other hand, argues that *Lohr* is not even applicable to this case. The defendant reasons that *Lohr* concerned a device approved under a rather less stringent process called the § 510(k) process. The device at issue in this case is an investigational device exception (IDE) device, and thus, subject to more stringent approval requirements, and exempted from certain federal regulations. It is the defendant's position that if this Court adopts the *Lohr* plurality's position, essentially requiring a showing of regulations specific to the device at issue before finding federal pre-emption, the state claims would be pre-empted, because the IDE requirements are specific to the device at issue herein. The Court now turns to the issues presented.

## II. DISCUSSION

### A. Standard for Motion to Reconsider

■ "A court is justified in reconsidering its previous ruling if: (1) there is an intervening change in the controlling law; (2) new evidence not previously available comes to light; or (3) it becomes necessary to remedy a clear error of law or to prevent obvious injustice." *Hester Industries, Inc. v. Tyson*

*Foods, Inc.*, 160 F.R.D. 15, 16 (N.D.N.Y. 1995) (*citing, Larsen v. Ortega*, 816 F.Supp. 97, 114 (D.Conn.1992), *aff'd*, 990 F.2d 623 (1993)); *Nossek v. Brd. of Educ. of the Duanesburg Central School Dist.*, 1994 WL 688298 (N.D.N.Y.1994). It is clear from the plaintiff's arguments, discussing the Supreme Court's decision in *Lohr*, that the plaintiff is claiming reconsideration is proper in this instance due to a change in the controlling law. Accordingly, the Court will consider *Lohr*, and determine what effect, if any, that decision has on the law that should be applied to this case.

## B. The June 20, 1996 Memorandum–Decision and Order

In the Memorandum–Decision and Order giving rise to the present motion, the Court dismissed the plaintiff's Complaint after finding that the plaintiff's state law claims were pre-empted by federal law. More specifically, the Court found that the MDA provide for pre-emption when "a State [established] or continue[d] in effect with respect to a device intended for human use any requirement— (1) which is different from, or in addition to, any requirement applicable under [the MDA] to the device" at issue. *See* June 20, 1996 Memorandum–Decision and Order, 928 F.Supp. 185, 189. The Court then examined the regulations applicable to a device classified as an IDE. The Court found that the IDE approval letter referenced 21 C.F.R. § 812, *et seq.*

"That Part of the C.F.R. set forth, *inter alia*, general provisions relating to IDE's, 21 C.F.R. § 812.1–812.19, the IDE application and approval process, 21 C.F.R. § 812.20–812.38, and regulations relating to FDA investigations, monitoring, record keeping, and disciplining of IDE approved device manufacturers and marketers, 21 C.F.R. § 812.40–812.150. *See, e.g.*, 21 C.F.R. § 812.60 (composition and duties of institutional review board); 21 C.F.R. § 812.100 (responsibilities of investigators); 21 C.F.R. § 812.145 (inspections); 21 C.F.R. § 812.150(a)(4) (deviations from investigational plan); 21 C.F.R. § 812.150(b)(2) (withdrawal of IRB approval).

In this case ... the device at issue was ... investigational ... [and] substantial FDA regulations relating to the design, manufacture, and safety have been shown to apply to the device. A complex structure was set forth to monitor, investigate, record, and, if necessary, sanction with withdrawal, medical devices granted an IDE."

June 20, 1996 Memorandum–Decision and Order at 192. Pursuant to the above referenced analysis and the authority of the Second Circuit's decision in *Becker v. Optical Radiation Corp.*, 66 F.3d 18 (2d Cir.1995), the Court granted the defendant's motion for summary judgment.

*Becker*, decided in the context of a device classified as an IDE, stated that "[i]t is now well established that a 'requirement' for purposes of the preemption provision of the MDA may be created by state common law as well as by statutory law." 66 F.3d at 19 (citations omitted). The device in *Becker* was subject to specific regulations relating to that category of device, intraocular lenses. 21 C.F.R. § 813 *et seq.* However, the Court's decision did not turn on that fact. Rather, the Court stated that the state law claims were pre-empted whether or not the device was subject to the specific regulations, or the general regulations relating to an IDE. Accordingly, the *Becker* Court then held that the state tort claims of strict liability, breach of express and implied warranties, and negligence relating to design, inspection, instructions, labeling, warning and testing were preempted by the MDA. *Id.*

The plaintiff now challenges the Court's conclusion based on the Supreme Court's decision in *Medtronic, Inc. v. Lohr.*[1] It is for the Court now to determine what if any change in the applicable law has been occasioned by *Lohr*, and what effect that decision has on the instant case.

## C. *Lohr v. Medtronic, Inc.*

Subsequent to this Court's June 20, 1996 Memorandum–Decision and Order, the Su-

---

**1.** —— U.S. ——, 116 S.Ct. 2240, 135 L.Ed.2d 700 (1996).

preme Court handed down its decision in *Medtronic, Inc. v. Lohr*. It is the plaintiff's position that *Lohr* mandates a reconsideration and reversal of this Court's grant of the defendant's motion for summary judgment.

In this Court's June 20, 1996 Memorandum–Decision and Order, the Court ruled, as a matter of law, that the plaintiff's state law claims were pre-empted pursuant to § 360k(a) of the MDA.[2] That statute states

> [N]o State or political subdivision of a State may establish or continue in effect with respect to a device intended for human use any requirement—(1) which is different from, or in addition to, any requirement applicable under this Act to the device, and (2) which relates to the safety or effectiveness of the device or to any other matter included in a requirement applicable to the device under this Act.

21 U.S.C. § 360k(a).

The *Lohr* plurality[3], despite stating that "... the pre-emptive language of § 360k(a) means that [the Court] need not go beyond that language to determine whether Congress intended the MDA to pre-empt at least some state law ...",[4] nevertheless decided that the scope of such pre-emption must be determined by looking to "... the 'statutory framework' surrounding [the statute], as revealed not only in the text, but through the reviewing court's reasoned understanding of the way in which Congress intended the statute and its surrounding regulatory scheme to affect business, consumers, and the law." *Id.* at ——, 116 S.Ct. at 2251.[5] Looking to the FDA regulations, the Court found that they "... provide that state requirements are pre-empted 'only' when the FDA has established 'specific counterpart regulations' or ... other specific requirements applicable to a particular device." 21 C.F.R. § 808.1(d) (1995). The Court further explained that the "regulations even go so far as to state that § 360k(a) generally 'does not preempt a state

or local requirement prohibiting the manufacture of adulterated or misbranded devices' unless 'such a prohibition has the effect of establishing a substantive requirement for a specific device.'" *Lohr,* —— U.S. at ——, 116 S.Ct. at 2257, *quoting* 21 C.F.R. § 808.1(d)(6)(ii). The Court added the caveat that the FDA "... statutory and regulatory language [does not] necessarily preclude[ ] 'general' federal requirements from ever pre-empting state requirements, or 'general' state requirements from ever being pre-empted ..." *Id.* at ——, 116 S.Ct. at 2257. However, the ultimate conclusion reached by the *Lohr* Court as to the device at issue therein, and the specific point of contention for the dissent, is that for an FDA regulation to pre-empt the state law claims asserted as to that device it can not have a "general nature," but rather "... must be 'applicable to the device' in question before it has any pre-emptive effect." *Id.* at ——, 116 S.Ct. at 2256. In effect, at least as applied to § 510(k) devices, the Supreme Court in *Lohr* has attempted to ratchet-in the scope of federal pre-emption under the MDA.

The device at issue in *Lohr* was a § 510(k) device. *Id.* at ——, 116 S.Ct. at 2247. As explained by Justice Stevens, a device that is approved for marketing pursuant to the so-called § 510(k) Notification process has been determined to be "... 'substantially equivalent' to a pre-existing device, ... [and] can be marketed without further regulatory analysis (at least until the FDA initiates the PMA process for the underlying pre–1976 device to which the new device is 'substantially equivalent')." *Id.* A § 510(k) device is approved in far less time, on the basis of far less information, and with a much greater chance of approval than devices approved under the PMA (Pre-market approval) process. *See Id.* Moreover, because of the relative ease of approval pursuant to the § 510(k) process, roughly eighty-percent of

---

**2.** The plaintiff's claims were for strict products liability, negligent design, negligent manufacture (failure to follow federal regulations), and breach of express and implied warranties.

**3.** Justices Stevens, Kennedy, Souter, Ginsburg, and as to Parts I, II, III, V, and VII, Breyer.

**4.** —— U.S. at ——, 116 S.Ct. at 2250 (Stevens, J.), quoted with approval by the dissent at ——, 116 S.Ct. at 2262 (O'Connor, J.).

**5.** *See also,* —— U.S. at ——–——, 116 S.Ct. at 2260–61 (Breyer, J., finding the statutory language ambiguous, and thus, looking to regulatory scheme).

all new medical devices are approved by that process. *Id.* at ——, 116 S.Ct. at 2248. The crux of the Court's discussion concerning the § 510(k) process is that the process does not ensure the safety and efficacy of the product, but rather, promotes competition in the medical devices marketplace by streamlining the initial approval process and enabling manufacturers to enter the market more quickly. *See Id.* Moreover, § 510(k) devices, such as the device at issue in *Lohr,* are "... subject only to the general control provisions of the Act," rather than specific requirements applicable to a particular device. *Id.* Accordingly, the Supreme Court ruled that the plaintiff's state common law claims were not pre-empted by the MDA. The Court now turns to the instant case.

## D. Pre-emption As To State Negligence and Strict Products Liability Claims Relating To The Richards IDE Device

In the instant case, this Court has already determined that the device at issue, a prosthetic hip replacement system, is an IDE. The plaintiff does not dispute this fact. As stated above, an IDE is subject to the general provisions of the MDA and specific regulations promulgated expressly for IDE devices. *See* 21 C.F.R. § 812, *et seq.* The regulations set forth in § 812 largely mirror those in 21 C.F.R. § 813, relating to intraocular lens devices (IOL).

This Circuit has held that state law claims of strict liability and negligence, for defective design, defective manufacture, failure to warn and failure to test were "... preempted because the MDA and the IOL Regulations specifically exempt experimental IOLs from the safety and effectiveness standards usually imposed on medical devices." *Becker,* 66 F.3d at 21, *citing* 21 C.F.R. § 813.5; *see also Talbott v. C.R. Bard, Inc.,* 63 F.3d 25 (1st Cir.1995). The regulations relating to IOLs have set forth certain regulations to which intraocular lens are exempt. *See* 21 C.F.R. § 813.1(b). 21 C.F.R. § 813.1(b) states, in relevant part, that IOLs as exempt devices are exempt from

... Misbranding under section 502, registration and premarket notification under section 510, performance standards under section 514, premarket approval under section 515, records and reports under section 519, restricted devices under section 520(e), good manufacturing practices under section 520(f), and color additives under section 721.

IDEs, in general, are exempt from these provisions, as well. *See* 21 C.F.R. § 812.1(a). 21 C.F.R. § 812.1(a) states, in relevant part, that IDEs are exempt from the following regulations

Misbranding under section 502, registration, listing, and premarket notification under section 510, performance standards under section 514, premarket approval under section 515, a banned device regulation under section 516, records and reports under section 519, restricted device requirements under section 520(e), good manufacturing practice requirements under section 520(f) (unless the sponsor states an intention to comply with these requirements under s 812.20(b)(3) or s 812.140(b)(4)(v)) and color additive requirements under section 721.

Thus, as stated in *Becker,* state common law tort claims "... would impose requirements on the IOLs [and IDEs of which IOLs appear to be a subset] that are, certainly, additional to those imposed by the MDA scheme." *Becker,* 66 F.3d at 21 (citation omitted). This Court reads nothing in *Lohr* that compels a different conclusion. Unlike the § 510(k) devices that so troubled the *Lohr* Court, IDEs are subject to regulations that "... set forth detailed procedures for determining whether [IDEs] are safe and effective." *Id.* Moreover, IDEs are subject to specific regulations promulgated for application, not generally to all devices, but to IDEs specifically.[6] Finally, Congress has expressly exempted IDEs from certain regulations, as set forth above. Based on the foregoing, the Court can see no reason to reconsider its finding that the plaintiff's state common law claims sounding in negligence and strict products liability are pre-empted.

6. IDEs represent less than twenty-percent of the devices approved for marketing by the FDA.

### E. Pre-emption As To Claim Of Failure To Follow Federal Regulations

 Although not clearly delineated as such, the plaintiff's claim of negligent manufacture seems to sound in a failure of the defendant to comply with federal regulations. As stated unanimously in *Lohr*,

> Where a state cause of action seeks to enforce an FDCA requirement, that claim does not impose a requirement that is "different from, or in addition to" requirements under federal law. To be sure, the threat of a damages remedy will give manufacturers an additional cause to comply, but the requirements imposed on them under state and federal law do not differ. Section 360k does not preclude States from imposing different or additional remedies, but only different or additional requirements.

*Lohr*, —— U.S. at ——, 116 S.Ct. at 2264 (O'Connor, J., concurring/dissenting).

Accordingly, to the extent that the plaintiff has alleged a claim that the defendant failed to comply with a federal regulation, such claim is not pre-empted by the MDA and may go forward. *See Estate of LeMay v. Eli Lilly & Co.*, 881 F.Supp. 428 (E.D.Wis.1995) (claim for negligent manufacturing, insofar as it sought to redress noncompliance with federal regulations, was not preempted).

### F. Warranty Claims

The plaintiff has not set forth any basis to reconsider the Court's dismissal of the claims sounding in breach of express and implied warranty. Accordingly, the decision of this Court stands as decided.

### III. CONCLUSION

For the foregoing reasons, the Court finds that the Supreme Court's decision in *Medtronic, Inc. v. Lohr*, does not compel reconsideration of this Court's June 20, 1996 Memorandum–Decision and Order, except to the extent that the Court does find that to the extent that the plaintiff has alleged a claim for the failure of the defendant to comply with federal regulations, such claim should go forward. *Lohr* may not apply outside the context of a § 510(k) device, and if it does, an

IDE device is subject to specific regulations that, as stated above comport with the *Lohr* standards permitting pre-emption of state common law tort claims.

**IT IS SO ORDERED.**