**Kathryn NIEHOFF, Appellant,**

v.

**SURGIDEV CORPORATION, Appellee.**

**No. 96–SC–0127–DG.**

Supreme Court of Kentucky.

June 19, 1997.

Rehearing Denied Oct. 2, 1997.

⊛⇒18.65

Roy Kimberly Snell, LaGrange, for Appellant.

William Kennedy Simpson, Carol Dan Browning, Jeanne M. Picht, Stites and Harbison, Louisville, for Appellees.

WINTERSHEIMER, Justice.

This appeal is from a decision of the Court of Appeals which affirmed a summary judgment by the circuit court determining that the claim for compensatory and punitive damages was properly dismissed because federal law preempted any claim for state tort relief.

The issue is whether the tort claim under Kentucky common law is in conflict with or divergence from any specific federal regulation applicable to the medical device which allegedly ultimately resulted in the loss of the patient's eye.

**Facts of this Case**

The product involved in this appeal is the Style 10 intraocular lens (IOL) manufactured by Surgidev. The IOL is an artificial lens which replaces the natural crystalline lens in the human eye following cataract surgery. It is a prescription medical device which is surgically implanted in the patient's eye in order to replace the diseased natural lens of the eye. The Style 10 was a particular type of IOL known as a "closed-loop anterior chamber" IOL because it was specifically designed for implantation in the anterior chamber of the eye which is the space between the cornea and the iris. The Style 10 lens was provided to physicians who were ophthalmologists and served as clinical investigators pursuant to an investigational device exemption which was granted by the Federal Food and Drug Administration in April of 1978.

Niehoff, whose vision had been significantly impaired by cataracts, had a cataract removed from her left eye by her ophthalmologist, Dr. John Hafer, in September of 1983. Dr. Hafer used a surgical technique known as "extracapsular cataract extraction." The doctor was an approved clinical investigator for the Style 10 lens and had signed an agreement with Surgidev which required him to obtain written informed consent from all Style 10 patients. Niehoff claims she did not know at the time of her surgery that the Surgidev Style 10 was an investigational device which had not yet been approved by the FDA as safe and effective. Dr. Hafer had explained to her that there was some risk involved in the procedure, but he allegedly did not tell her that the lens was experimental or investigational. Federal law requires that manufacturers and physicians obtain informed consent from a patient regarding an implantation of an investigational IOL and have a signed form of informed consent. The form explains specific complications of the procedure and advises the patient that her surgery will be part of a clinical investigation required by the FDA. There is no signed consent form in the record for the 1983 surgery. This Court recognizes that Dr. Hafer is not a party to this appeal and any claims against him will proceed following the resolution of this appeal regardless of the result.

Niehoff developed complications from the cataract surgery in 1989 and the Style 10 lens was surgically removed in September of 1990. She suffered a surgical infection which resulted in the ultimate loss of her eye. In 1991, she filed a civil action alleging product liability claims based on strict liability and negligence against Surgidev and alleging medical malpractice negligence against the physician in a separate suit. Surgidev obtained summary judgment on the grounds that the product liability claims were preempted by federal law. The Court of Appeals affirmed the reasoning that a court decision in a products liability or negligence suit may be established or define an accept-

able standard and serve to compel a manufacturer to alter the design of a specific investigational device. It therefore imposes a different or additional requirement relative to the safety and effectiveness of the device, and consequently, the Court of Appeals concluded that it can be said to be of limited or specific applicability rather than of general applicability. Following the Court of Appeals decision, the United States Supreme Court rendered *Medtronic, Inc. v. Lohr*, —— U.S. ——, 116 S.Ct. 2240, 135 L.Ed.2d 700 (1996), which held that state law claims for negligence and product liability are not automatically preempted. This Court accepted discretionary review.

▮ We hold that the claims of Niehoff for negligence and product liability for the injury caused by this particular experimental medical device are not preempted in state court by federal law. Recovery under a Kentucky claim does not rest on a specific finding that any particular claim would conflict with the enforcement of any specific federal regulation. *Lohr, supra,* is not necessarily dispositive here. The congressional purpose behind the substantially equivalent rule discussed in *Lohr* is distinguishable from the research and development goal of the investigational device exemption. The FDA has a more specific regulation regarding IOLs. The result and rationale of *Lohr* is instructive in our disposing of this case.

### The Federal Regulations

The purpose of Congress and the FDA in allowing the marketing of an investigational device did not imply any intention to insulate Surgidev from liability to a patient who had not assumed the risk. The reasoning of the Court of Appeals in transforming general products liability law into a requirement of limited or specific applicability, rather than general applicability, is unconvincing.

In 1976, Congress amended the Food, Drug and Cosmetic Act, 21 USCA §§ 301–393 (1982) so as to give the FDA regulatory authority over all medical devices. An IOL is a Class III device which means it potentially presents an unreasonable risk of injury to patients. Class III devices are ordinarily subject to a FDA pre-market approval process, including a determination that the product is safe and effective, before marketing is permitted. However, in order to encourage research and development, Congress created an investigational device exemption under which the FDA may permit marketing for clinical investigation trial without pre-market approval.

21 U.S.C. § 360k(a) provides that no state may establish with respect to a medical device any requirement which is different from or in addition to any applicable federal requirement. FDA regulations interpret the term "requirement," as used in the federal statute, as including state court decisions. A state requirement is preempted only when the FDA has established counterpart regulations or there are other specific requirements applicable to the particular device under the act. Moreover, according to the FDA, the act does not preempt state requirements of general applicability when the purpose of the requirement relates to other products in addition to devices. Examples of Class III devices are pacemakers, intrauterine devices, heart valves and IOLs.

The FDA had not acted on the PMA application of Surgidev at the time the IOL was implanted in Niehoff's eye. In addition, the FDA never acted on the application before May of 1988, when Surgidev voluntarily suspended the clinical investigation of Style 10 lenses with notice to all clinical investigative physicians.

▮ Congress provided for the investigational device exemption as a means for collecting enough data to enable the FDA to make an informed decision on pre-market approval. A review of the legislative history indicates that Congress did not believe the exemption was a means for enabling a manufacturer to market an experimental device without a determination of its safety and effectiveness. The congressional act places no time limit on exemptions, however, the FDA expressed concern that investigational exemptions should not be used as a subterfuge for commercial distribution of lenses and that the investigational study should not be unduly prolonged. 42 Fed.Reg. at 58875. In the situation presented by this appeal, it

appears that Surgidev sold the Style 10 lens as an investigational device for ten years without ever obtaining pre-market approval of the lens.

The FDA imposed narrow restrictions on the reach of § 360k. In June of 1977, the agency announced that the regulation was intended to preempt only those state or local laws that directly and specifically relate to devices. 42 Fed.Reg. at 30383–84. The regulation subsequently promulgated by the FDA confirmed the narrow construction of § 360k. In addition the agency also conditioned the use of the investigational exemption of any medical device upon the requirement of informed consent to be obtained from each human subject or a representative.

Surgidev argues that this case presents a purely legal question involving federal constitutional law and its application to state tort claims. They contend that every federal court which addressed the issue prior to *Lohr* found that state common law product liability claims involving IOLs were preempted. To support their argument they rely on *Slater v. Optical Radiation Corp.*, 961 F.2d 1330 (7th Cir.1992), *cert. denied* 506 U.S. 917, 113 S.Ct. 327, 121 L.Ed.2d 246, which involved an investigational IOL with a design similar to that of the Style 10 IOL. The reasoning of *Slater, supra,* was adopted by every other federal appellate court which considered the issue until the United States Supreme Court rendered *Lohr* in 1996, which involved a cardiac pacemaker, also a Class III medical device. The device in *Lohr* was never subjected to the PMA and IDA procedures but was authorized under 21 U.S.C. § 360(k) substantial equivalents. The pacemaker in *Lohr* was not an investigational device and consequently the investigational device exemption would not apply in any event. Pre-market approval was postponed pursuant to § 510(k).

The Kentucky Court of Appeals, in reaching its decision, agreed with the majority of federal circuit courts which have considered the question and based its decision on the *Slater* case. *Slater* completely barred a plaintiff from recovery under Illinois law for breach of warranty, strict liability and negligence in connection with a defective lens.

The federal court conceded that the regulations imposed no requirement concerning the design of IOL devices and that there is no federal damage remedy that a plaintiff might invoke. The *Slater* court believed that the FDA had established procedures for determining whether the experimental design is safe and effective and these procedures sufficed as a counterpart regulation preempting any state law bearing on the safety of an IOL. All federal courts did not concur. In *Kennedy v. Collagen Corp.*, 67 F.3d 1453 (9th Cir.1995), the Ninth Circuit held that pre-market approval is supposed to benefit consumers and not insulate manufacturers from liability. *Kennedy* expressed concern over the disregard by other federal courts of the long-standing narrow construction of § 360k by the Agency.

### Medtronic, Inc. v. Lohr

In *Lohr*, the U.S. Supreme Court has now established that medical device amendments of 1976 do not preempt state law unless a specific state requirement contravenes a specific regulation. *Lohr* involved claims under Florida law against a manufacturer of a defective pacemaker. Lohr had sustained injury in 1990 when her pacemaker, a Class III device that Medtronic had placed on the market as the substantial equivalent device pursuant to 21 C.F.R. § 510(k), failed because of a defective lead.

The opinion of the United States Supreme Court which was authored by Justice Stevens concluded that the medical devices amendments did not preempt any of the tort claims under the common law of Florida for negligence and strict liability. Our resolution of the Kentucky case is highly influenced by the decision of *Lohr* and the analysis we give it. Niehoff contends that *Lohr* provides a corrective and authoritative view that the real objective of Congress in 1976 was to provide consumer protection and informed deference to the FDA in resolving any difference between state and federal regulatory interest. Niehoff argues that *Lohr* effectively abolishes any immunity running to manufacturers under the medical device amendments. Surgidev, on the contrary, characterizes the *Lohr* decision as a 4-1-4 plurality asserting

that the concurring opinion of Justice Breyer disagreed with the reasoning of the plurality but concurred in the result only. Part of our task is to sort out the varying views expressed by the members of the United States Supreme Court.

Our consideration of *Lohr* indicates that it is not necessarily dispositive of the situation presented in this case. However, we believe that *Lohr* is instructive and the result and rationale of *Lohr* is of considerable assistance in reviewing the matter before us. In essence, *Lohr* held that the state tort claims for negligence and product liability were not always preempted. The Court noted that there is a presumption against preemption which occurs only when it is the clear and manifest intent of Congress as revealed by the language of the act and the purpose and structure of the statute as a whole. The *Lohr* decision permitted the plaintiff to maintain an action for the manufacturer's violation of FDA regulations. In that context, the state requirement is equivalent to and not different from the federal requirement. The decision also reasoned that the state common law requirements upon which the plaintiff based her claim were not specifically developed with respect to medical devices. The court stated that it was substantially informed by the FDA interpretive regulations in reaching that conclusion. The decision went on to say these state requirements therefore escape preemption because their generality leaves them outside the category of requirements that § 360k envisioned to be with respect to specific devices such as pacemakers.

Surgidev also argues that *Lohr* supports a finding of preemption in this case because preemption is consistent with the express congressional intent. We disagree. The congressional purpose behind the substantially equivalent rule is distinguishable from the research and development ends of the investigational device exemption. The FDA has more specific regulations regarding IOLs. Congress and the FDA clearly intended to allow Surgidev to market its IOL as an investigational device, but this permission did not extend to an insulation of Surgidev from any liability to a patient who had not as-

sumed the risk. The distinctions in *Lohr* do not remove this case from its larger principles. There is a presumption against preemption and a deference to the FDA interpretation of preemption.

In our analysis of the decision rendered by the United States Supreme Court, we must examine the concurring opinion of Justice Breyer who joined with the author of the majority opinion, Justice Stevens, and three other justices for Parts I, II, III, VI and VII of the decision. Accordingly, these parts of the *Lohr* opinion constitute the majority view.

■ The doctrine of federal preemption is derived from the supremacy clause of the United States Constitution, Article VI. *McCulloch v. Maryland,* 17 U.S. (4 Wheat.) 316, 4 L.Ed. 579 (1819), determined that a state law that conflicts with federal law is without effect. The historic police powers of the state are not preempted in the absence of "the clear and manifest purpose of Congress" to do so. *Rice v. Santa Fe Elevator Corp.,* 331 U.S. 218, 67 S.Ct. 1146, 91 L.Ed. 1447 (1947). The United States Supreme Court has stated that it is reluctant to interpret a federal statute in such a way as to find preemption of subjects traditionally governed by state law. *CSX Transportation v. Easterwood,* 507 U.S. 658, 113 S.Ct. 1732, 123 L.Ed.2d 387 (1993). Determination of whether a federal statute preempts a state cause of action depends on the purpose of Congress in enacting the federal statute. *Malone v. White Motor Corp.,* 435 U.S. 497, 98 S.Ct. 1185, 55 L.Ed.2d 443 (1978).

■ The congressional purpose to preempt a state remedy may be determined in either of two ways. The first is whether the preemption is found in the express language of the statute, *Cipollone v. Liggett Group, Inc.,* 505 U.S. 504, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992). The second is to find preemption implied from the structure and purpose of the statute. Implied preemption occurs when the state law actually conflicts with federal law or where the federal law so thoroughly occupies the legislative field that it may be reasonably inferred that Congress left no room for the state to supplement it. Where a statute, such as the one we are

considering, has a provision explicitly addressing preemption, that provision provides a reliable indicator of the congressional intent with respect to state authority. In *Cipollone,* the preemption statute in question provided that no requirement or prohibition based on smoking and health shall be imposed under state law with respect to advertising or promotion of any cigarettes.

Congress has given the FDA a unique role in determining the scope of § 360k's preemptive effect. In most cases a state law will be preempted only to the extent that the FDA has promulgated a relevant federal requirement.

The *Lohr* decision reaffirms the concept that there is a presumption against the preemption of state regulations and recognizes the historic primacy of state regulation of matters of health and safety. The decision also recognizes that deference is due to the FDA's own interpretation of the medical device amendments, including § 360k. The decision endorses the narrow interpretation of preemption and agrees that § 360k does not preempt state or local requirements that are equal to or substantially identical to requirements imposed by or under the federal act. The decision in *Lohr* clearly cautioned that future decisions on the scope of preemption under the federal act must focus on a comparison between specific federal and state regulations. Earlier decisions such as *Slater* had relied on the general FDA safety regulations to preempt any state common law theory challenging the design of a medical device, even though the federal regulations had not considered any specifics for the design of a particular device.

In reviewing the decision in *Lohr,* we are obliged to consider both the plurality analysis of Justice Stevens and the concurring opinion by Justice Breyer. The plurality opinion indicates that the term "requirements" has a narrower meaning in § 360k than in the statute at issue in *Cipollone.* Justice Breyer disagrees with the plurality on two grounds. First, he believes that some common law actions are preempted by § 360k, and second, he disagrees with the plurality dicta that preemption of common law claims would be few and rare. He establishes a standard of

his own in which there must be a conflict with federal regulations and regulations must be so pervasive as to preempt the field of state common law actions. Justice O'Connor wrote a concurring opinion in which she disagreed with the analysis of the majority plurality and parts of the Breyer analysis. She did concur in finding that the common law defective design claims were not preempted. However, she believed that federal regulations relating to manufacturing and labeling were so comprehensive as to preempt common law claims based on negligent manufacturing or labeling. Three justices joined her opinion. Justice Breyer refrained from joining only Part IV, which contained a detailed distinction between the previous analysis of preemption under a different statute regulating warnings on cigarettes and its analysis under the medical device amendments and Part VI, in which Justices Stevens, Kennedy, Souter and Ginsberg declined to resolve the contention by Lohr that common law duties are never requirements within the meaning of § 360k and that the statute therefore never preempts common law actions. In his concurring opinion, Justice Breyer was explicit in providing his reasons for not joining IV and VI because he believed Part IV emphasized the difference between the medical device amendments and the preemption statute at issue in *Cipollone v. Liggett Group, Inc., supra,* because those differences are not relevant to this case. Justice Breyer did not join Part VI because he was not convinced that future incidents of medical device amendments preemption of common law claims will be few or rare.

We find the analysis by Justice Breyer to be critical to the decision of the U.S. Supreme Court and helpful in disposing of this case. His view was based on the proposition that § 360k would not preempt a state court decision based on a finding by a jury under the common law, unless it directly contravened a specific federal regulation applicable to a specific device. Both Justice Stevens in his plurality and Justice Breyer determined that the courts must look to the FDA for responsibility in administering the medical devices amendments. Justice Breyer pointed out that the FDA had already promulgat-

ed a specific regulation designed to help. The regulation in question is 21 C.F.R. § 808.1(d) which states in pertinent part that state requirements are preempted only when there are specific federal requirements applicable to a particular device, thereby making any existing divergent state requirements applicable to the device different from or in addition to the specific federal requirements. Justice Breyer and the plurality opinion agreed that none of the state tort claims presented by Lohr were preempted.

The claims presented by Niehoff against Surgidev are similar to those presented by Lohr against Medtronic and are not precluded by the narrow specific approach to preemption referenced by the *Lohr* case.

The tort claims under Kentucky common law are not divergent from or in conflict with any specific FDA regulations applicable to the Style 10 IOL. Niehoff alleges that the Surgidev Style 10 was a defective and unreasonably dangerous product under Kentucky's common law strict liability. She further claims that Surgidev negligently designed, marketed and monitored the device and that her strict liability and negligence claims include allegations of failure to warn or to obtain her informed consent to the use of the experimental device.

The medical device amendments do not preempt her claim that Surgidev is strictly liable for the defective Style 10 IOL. Kentucky has adopted Section 402A of the *Restatement (Second) of Torts* which imposes strict liability on one who sells any product in a defective condition unreasonably dangerous to the user or consumer, even though the seller has exercised all possible care in the preparation and sale of the products. KRS 411.300 et. seq. and *Dealers Transport Company v. Battery Distributing Company*, Ky., 402 S.W.2d 441 (1966), in regard to the federal preemption concern, state that defective design and failure to warn are separate aspects of the same cause of action, strict liability. *See Montgomery Elevator Co. v. McCullough*, Ky., 676 S.W.2d 776 (1984).

■ Kentucky's strict liability case law and statutes are laws of general applicability to all products and fall beyond the scope of the federal preemption under § 360k. The claim by Surgidev of preemption to the defective design allegation fails because there is no specific federal requirement which addresses or contradicts the specific opinions of her own expert which are in turn based upon a criticism of the Style 10 that appears in medical literature. There is no specific counterpart regulation that can preempt a Kentucky common law judgment based on a potential jury finding that the Style 10 IOL was defective or unreasonably dangerous because of its design. The claim by Niehoff that she never received any even basic instruction or warning as required by federal law is not in conflict with the applicable federal regulations. The federal amendments do not preempt her claim that Surgidev was negligent in its design, its failure to warn and its violation of federal regulations. A judgment by a Kentucky court or a potential jury verdict that Surgidev failed to use ordinary care in its design or in its failure to report its data to its investigators or any possible violation of federal regulations would not diverge from any specific federal regulation. Obviously, it would assist in enforcing them. The medical device amendments does not preempt state punitive damage remedies. There is no contradiction or conflict in any of these concepts should any of them become viable in a proper common law tort action in Kentucky.

Surgidev's many authorities presented to support its position are unpersuasive. We believe the citation by Surgidev to the Federal District Court decision in *Berish v. Richards Medical Co.*, 937 F.Supp. 181 (N.D.N.Y. 1996), which was rendered after *Lohr*, is without merit. We are more persuaded by the decision of the Missouri Supreme Court in *Connelly v. Iolab Corp.*, 927 S.W.2d 848 (Mo.1996), which held that the medical device amendments did not preempt any of the state court claims of a plaintiff arising from the defective design of an IOL or the manufacturer's misconduct in failing to warn physicians of its high rate of complication. *See also Montoya v. Mentor Corp.*, 122 N.M. 2, 919 P.2d 410 (App.1996).

### Conclusion

It is the holding of this Court that the medical device amendments of 1976 do not

preempt Kentucky law because there is no specific state requirement which contravenes, contradicts or conflicts with a specific federal regulation. The tort claims presented under Kentucky common law are not divergent from or in conflict with any specific federal regulation applicable to the Style 10 IOL.

The decision of the Court of Appeals is reversed and this matter is remanded to the circuit court for trial on the merits.

GRAVES, LAMBERT, STUMBO and WINTERSHEIMER, JJ., concur.

ERIC L. ISON, Special Justice, dissents by separate opinion in which STEPHENS, C.J., and COOPER, J., join.

JOHNSTONE, J., not sitting.

ERIC L. ISON, Special Justice, dissenting.

Congress' intent to preempt at least some state law is plain from the express language of 21 U.S.C. § 360k(a). The United States Supreme Court has made clear that some state common law damage claims are preempted by federal law. See, *Cipollone v. Liggett Group, Inc.,* 505 U.S. 504, 511–519, 112 S.Ct. 2608, 2615–2618, 120 L.Ed.2d 407 (1992). The first task before this Court is to decide whether Niehoff's state product liability claims are within the scope of those claims Congress intended to preempt. The second inquiry is whether claims for violation of federal regulations are properly before this Court, and if so treated, whether they also are preempted.

A state law claim is preempted if it conflicts with federal law or if federal law so thoroughly occupies the field as to make reasonable the inference that Congress left no room for state law to supplement it. See, *Cipollone,* 505 U.S. at 515–517, 112 S.Ct. at 2617. This Court today concludes that Niehoff's product liability claims of strict liability and negligence and her claims based on violation of federal regulations are not preempted. I believe that all of Niehoff's claims do conflict with federal law and that federal law thoroughly occupies the legislative field pertaining to the product of which Niehoff complains. I, therefore, respectfully dissent.

## I.

The Intraocular lens ("IOL") at issue in this case is a Class III medical device, regulated by the Food and Drug Administration ("FDA") under the Medical Device Amendments of 1976 ("MDA") to the Food, Drug and Cosmetic Act ("FDCA"). 21 U.S.C. § 360c et seq. Under the MDA, Congress provided that no state may establish any requirement which is different from, or in addition to, any requirement applicable to the IOL under the MDA, and which relates to the safety or effectiveness or any other matter included in the MDA which applies to the device. 21 U.S.C. § 360k(a). Pursuant to the MDA, the United States Congress has enacted numerous requirements which relate to the safety or effectiveness of Surgidev's IOL. The first such statute, essential to the resolution of this case is the Investigational Device Exemption ("IDE"). 21 U.S.C. § 360j(g).

Surgidev's IOL was marketed for human use from April 1978 to May 1988 under the auspices of an FDA clinical investigation. The requirements of this investigation are codified at 21 U.S.C. § 360j. This statute controlled the marketing and use of the device, and controlled the conditions under which the device reached Niehoff. Under Section (g) of that statute, Surgidev's IOL was granted an exemption from having to meet several requirements under the FDCA.

> The [FDA] Secretary shall ... by regulation prescribe procedures and conditions under which devices intended for human use may upon application, be granted an exemption from the requirements of Section 352, 360, 360d, 360e, 360f, 360i or 379e of this title or subsection (e) or (f) of this section or from any combination of such requirements **to permit the investigational use of such devices by experts qualified by scientific training and experience to investigate the safety and effectiveness of such devices.**

21 U.S.C. § 360j(g)(2)(A) (emphasis added).

Moreover, under 21 U.S.C. § 360j(g), the Congress delegated authority to the FDA to require

the establishment and maintenance of such records and the making of such reports ... of data obtained as a result of the investigational use of the device during the exemption, as the [FDA] determines will enable [it] to assure compliance with such conditions, review the progress of the investigation, and evaluate the safety and effectiveness of the device.

21 U.S.C. § 360j(g)(2)(B)(ii).

Further federal requirements relating to the safety and effectiveness of Surgidev's IOL are codified in 21 C.F.R. § 813. These regulations contain extensive requirements which apply specifically and exclusively to IOL's such as the one at issue in this case. The regulations painstakingly detail the controls and standards an IOL must meet to qualify for the IDE. The IDE regulations require a detailed application and plan for the clinical investigation, 21 C.F.R. §§ 813.20—813.25, and approval of the application by an institutional review committee in addition to the FDA. §§ 813.20, 813.30—813.42. These provisions further regulate virtually every aspect of the IOL's use during the investigation, from promotion and sale of the lens, committee monitoring of its performance, selecting investigators qualified to conduct the controlled investigation, outlining the parameters and protocol for that investigation, maintaining reports and records throughout the duration of the investigation, and ultimately the withdrawing of the exemption under certain conditions, §§ 813.65, 813.30(c)(5). Section 813.1(b) sets forth the general effect of the IOL exemption:

(b) *Effect of exemption.* (1) In general, intraocular lenses are exempted from provisions of the following sections of the act and regulations thereunder when an application for exemption applicable to the lenses is in effect under this part: Misbranding under section 502, registration and premarket notification under section 510, performance standards under section 514, premarket approval under section 515, records and reports under section 519, restricted devices under section 520(e), good manufacturing practices under section

520(f), and color additives under section 721.

During the ten year period when Surgidev's IOL was marketed under the IDE's provisions, there is nothing in the record to indicate that Surgidev had not satisfied the FDA in meeting the testing, record keeping, informed consent and other requirements of both the IDE statute and its copious accompanying regulations.

Now, however, Niehoff alleges that Surgidev's IOL was defective in that it was unreasonably dangerous for its intended use. She further alleges that Surgidev was negligent in the design, manufacture and sale of the IOL. In order to prevail at trial, Niehoff's claims require a fact finder to conclude that although Surgidev satisfied the requirements of 21 U.S.C. § 360j and 21 C.F.R. § 813, Surgidev sold the IOL in a defective condition that was unreasonably dangerous for human use. See *Dealers Transp. Co., Inc. v. Battery Distrib. Co., Inc.,* Ky., 402 S.W.2d 441, 446–447 (1965). Further, Niehoff asserts in her negligence claims that although Surgidev was permitted by the FDA's regulations to market the IOL as designed, manufactured, and labeled, it fell short of Kentucky's requirements to exercise the reasonable care required of an ordinarily prudent manufacturer. See, *C.D. Herme v. R.C. Tway Co., Inc.,* Ky., 294 S.W.2d 534, 537 (1956). Herein lies the actual conflict between Niehoff's state product liability claims and the federal requirements that controlled the investigational use of Surgidev's IOL. A comparison between the federal IDE and IOL requirements, and the elements of Niehoff's strict liability and negligence claims under Kentucky law, compels the conclusion that the state requirements Niehoff alleges fall squarely within the intended preemptive scope of the federal IDE statute and IOL regulations. Therefore, I cannot agree with the Majority's conclusion that Niehoff's state product liability claims of strict liability and negligence are not preempted.

II.

Before this Court reaches the conclusion from which I dissent, the Majority correctly

states many principles of law with which I agree. As an initial proposition, I agree with the Majority's review of the seminal legal principles which guide the analysis in this case. The Majority ably describes the supremacy of federal law based on *McCulloch v. Maryland*, 17 U.S. (4 Wheat) 316, 4 L.Ed. 579 (1819) and the sovereignty of states where historic police powers are concerned. Further, I believe the Majority is correct in describing the settled methods of determining Congressional intent where state and federal law collide. In my view, the Majority's analysis breaks down when it comes to the weight it gives to the alleged failure to obtain informed consent for Niehoff's surgical procedure. The Court appears determined to provide a remedy for this apparent omission through the tort process, concluding

> [t]he purpose of Congress and the FDA in allowing the marketing of an investigational device did not imply any intention to insulate Surgidev from liability to a patient who had not assumed the risk.

As tempting as it is in deciding this case to follow the Majority in its concern that Niehoff may not have consented to the treatment at issue, this omission is not determinative of the preemption issue. If Niehoff did not give her informed consent, she is not without remedy, even if her claims before this Court, as pled, are preempted. Her action below against her approved investigational opthamologist remains. Surgidev, as the manufacturer of the IOL, was not required to obtain informed consent from patients who used its device. This is true under tort law and under the protocol that controlled the clinical investigation in this case. To begin with, manufacturers such as Surgidev have no contact with patients. Surgidev was required under the federal regulations to obtain from each approved physician investigator, a written agreement to comply with the informed consent requirements of 21 C.F.R. § 50. There is no dispute that Surgidev complied with this regulatory duty by obtaining such a signed agreement from the physician who implanted the IOL in Niehoff's eye. Several cases addressing the issue spend little time in concluding that the duty to obtain informed consent lies with the physician and not the manufacturer. See, *Gile v.*

*Optical Radiation Corp.*, 22 F.3d 540, 543 (3rd Cir.), *cert. denied* 513 U.S. 965, 115 S.Ct. 429, 130 L.Ed.2d 342 (1994); *Lewis v. Intermedics Intraocular, Inc.*, 56 F.3d 703, 707 (5th Cir.1995): *Anderson v. George H. Lanier Memorial Hosp.*, 982 F.2d 1513, 1520 (11th Cir.1993).

### III.

I also respectfully disagree with the Majority's application of *Medtronic, Inc. v. Lohr*, —— U.S. ——, 116 S.Ct. 2240, 135 L.Ed.2d 700 (1996) to this case. Again, I agree with the Majority that while the *Lohr* decision is not dispositive of this case, its analysis is instructive. I also agree, as discussed further below, that the method by which the pacemaker at issue in *Lohr* was authorized for sale in the marketplace is different from the method by which Surgidev's IOL was authorized for use. The Majority further provides an excellent analysis of the evolution in the law from *Slater v. Optical Radiation Corp.*, 961 F.2d 1330 (7th. Cir.1992) and its progeny, to the Supreme Court's decision in *Lohr*.

The Majority, having observed that the "substantially equivalent" rule in *Lohr* is distinguishable from the research objectives of the IDE, and that the FDA regulations regarding IOL's are more specific, concludes that *Lohr* supports a finding that Niehoff's claims are not preempted. I do not agree with this conclusion.

My view of the difference between the Supreme Court's holding in *Lohr*, and the issue before this Court, comes in large part from the difference between the "substantially equivalent" approval process by which the pacemaker in *Lohr* reached the market, and the IDE approval process, by which Surgidev's IOL reached Niehoff here. The "substantially equivalent" requirement which controlled in *Lohr*

> [i]mposes a limited form of review on every manufacturer intending to market the new device by requiring it to submit a "premarket notification" to the FDA. (The process is also known as a § 510(k) process).... If the FDA concludes on the basis of the § 510(k) notification that the

device is "substantially equivalent" to a pre-existing device, it can be marketed without further regulatory analysis.

*Lohr*, —— U.S. at ——, 116 S.Ct. at 2246. As the Supreme Court observed, the "substantially equivalent" inquiry is brief and simple. It imposes no federal requirements on the design, manufacture or labeling of a product. *Lohr*, —— U.S. at —— – ——, 116 S.Ct. at 2253–54. The "substantially equivalent" approval process

is focused on equivalence, not safety.... **[A]s a result, substantial equivalent determination provide little protection to the public ... "Substantially equivalent" devices never been formerly reviewed under the MDA for safety or efficiency**

*Id.* (emphasis added). In order not to be put at a competitive disadvantage, manufacturers such as the manufacturer in *Lohr* were allowed to freely market their devices because they were "substantially equivalent" to other grandfathered devices already on the market. Having been placed on the same playing field as their competitors, such manufacturers logically should also be subject to the same standard of liability. It follows that the Supreme Court in *Lohr* concluded that the "substantially equivalent" pre-notification process was not a federal requirement that preempted common law claims of negligence or strict liability. In contrast, the IDE process does review in great detail, devices approved under 21 U.S.C. § 360j for safety and efficiency. This distinction is critical because while the FDA has not examined or approved the safety and efficiency of "substantially equivalent" devices such as the pacemaker in *Lohr*, the FDA has clearly reviewed and approved the Surgidev IOL device marketed pursuant to the IDE as sufficiently safe and effective for investigative use on human beings.

Surgidev obtained approval to market its IOL under this exemption by submitting an application which included the following information:

(2) A description of all components, ingredients and properties and a description of the principal of the operation of the device ... in enough detail so that a scientist or a physician familiar with the general type of lens **can make a knowledge judgment about the anticipated safety and effectiveness of the lens in the proposed investigational study.**

(3) A description of those methods, facilities, and controls used for the manufacture, processing, packing, and storage of the device in enough detail so that a person generally informed in that area **can make a knowledgeable judgment about the safety and effectiveness of the device in the proposed investigational study....**

(9) A copy of all informational material, including labels and other labeling, which is to be supplied to investigators as required by § 813.47(a).

21 C.F.R. § 813.20.

Surgidev was also required to submit an investigational plan which included,

[t]he plan for obtaining informed consent from subjects and copies of all informational materials to be given to subject, including all forms and materials to be used in obtaining such consent....

21 C.F.R. § 813.25.

Thus, when the FDA considered whether Surgidev's IOL could be used by investigators on patients including Niehoff, it first made a "knowledgeable judgment about the safety and effectiveness of the device." The FDA was also required to review and approve labeling and informed consent procedures applicable to the device during the investigatory period. This is completely distinguishable from the perfunctory "substantially equivalent" approval by which the allegedly defective pacemaker reached consumers in *Lohr*.

The FDA was solely responsible for the review, approval and monitoring of Surgidev's application to include its IOL in the investigational study. Further, the FDA was solely responsible for the determination that Surgidev's IOL was exempt from the statute's good manufacturing principles, labeling and performance requirements. The FDA might have disapproved or withdrawn Surgidev's right to participate in the investigation

under 21 C.F.R. § 813.30(c) if it made any of the following findings:

> (2) .... The report of prior investigation of the intraocular lens is inadequate to support a conclusion that it is reasonably safe to begin or continue the proposed investigational study.
>
> (3) **There is reason to believe that the lens may be unsafe or ineffective when used for the purpose or in the manner for which it is to be investigated**....
>
> (4) The investigational plan described in the application is not a reasonable plan, in full or in part, for scientific investigation to determine whether the investigation device is safe or effective.
>
> (5) The methods, facilities, and controls used for the manufacturing, processing, packing, storage, or implantation of the lens **do not assure adequately the safety and effectiveness of the lens**....
>
> (8) **The proposed investigational study subjects humans subjects to undue risks.**

*Id.* (emphasis added).

There is no evidence in this case that the FDA made any such finding. On the contrary, when the FDA approved Surgidev's IOL for marketing under the IDE, it concluded that Surgidev's IOL was safe and effective to be used for the purpose and manner for which it was to be investigated.[1] It further concluded that Surgidev's method for manufacturing and processing the lens assured adequately the safety and effectiveness of the device. Finally the FDA approved the proposed investigational study of the device finding it did not subject humans to undue risk. However misguided one may argue that these approvals may have been in retrospect, Niehoff may not be heard to collaterally attack the FDA's findings and attempt to reverse them in filing its state court action. Unlike the Petitioner's common law claims in *Lohr*, Niehoff's strict liability and negligence claims in this case collide directly with the federal requirements that applied to the subject device. Niehoff alleges requirements that are different than and in addition to the federal law which controlled the use of Surgidev's device and therefore her claims should be preempted.

## IV.

Congressional intent is the touchstone of all preemption analysis. See, *Lohr*, —— U.S. at ——, 116 S.Ct. at 2250, (quoting *Retail Clerks v. Schermerhorn*, 375 U.S. 96, 84 S.Ct. 219, 11 L.Ed.2d 179 (1963)). Congress and the FDA intended to insulate manufacturers from liability to individuals asserting common law strict liability and negligence claims such as Niehoff's claims in this case because they interfere with and threaten the federal interest which is plain on the face of the statute:

> It is the purpose of this subsection to encourage, to the extent consistent with the protection of the public health and safety and with ethical standards, the discovery and development of useful devices intended for human use **and to that end to maintain optimum freedom for scientific investigators in their pursuit of that purpose.**

21 U.S.C. § 360j(g)(1) (emphasis added).

Exposing a manufacturer to tort liability after it has qualified for and is involved in a clinical investigation of its device, is wholly inconsistent with the objective of maintaining "optimum freedom for scientific investigators." That is why the FDA expressly exempts manufacturers from the pre-marketing approval process, and perhaps most importantly from general good manufacturing, labeling and performance standards under the MDA during the investigation of that device. The fact that Surgidev's IOL was exempt from following the good manufacturing practice requirements under the FDCA, as well as labeling or "misbranding" requirements, and performance standards under the statute is convincing evidence of Congress' intent to preempt state common law actions against manufacturers based upon similar theories of liability. Notably, these federal requirements from which in-

---

1. Certainly, Niehoff is correct that the FDA never approved Surgidev IOL as safe and effective for commercial distribution but this fact proves nothing in support of her claim. The entire purpose of the clinical investigation approved by the FDA was to determine the safety and effectiveness of the IOL *prior to* its approval for commercial distribution.

vestigational devices are exempt, are also the standards the Supreme Court decided in *Lohr* were requirements of "general enforcement" with no preemptive effect in that case. *Lohr*, —— U.S. at ——, 116 S.Ct. at 2256. Logically then, if the Supreme Court found these general federal requirements were identical with the common law manufacturing and labeling claims in *Lohr*, they are similarly coincident to Niehoff's general common law claims in this case. Thus, the FDA's decision to exempt IDE devices from the general federal requirements for good manufacturing, performance and labeling, instructs that IDE devices are also exempt from state common law claims brought on the same grounds.

The Majority insists that Niehoff's claims are not preempted because they rest upon state laws of "general applicability." However, the Majority's conclusion is contravened by the Supreme Court's acknowledgment that there *are* general state laws which are preempted by *conflicting* federal requirements.

> [W]e do not believe that this statutory and regulatory language necessarily precludes general federal requirements from ever preempting state requirements, **or general state requirements from ever being preempted**. . . .

*Lohr*, —— U.S. at ——, 116 S.Ct. at 2257 (emphasis added, quotations omitted); see also *Chambers v. Osteonics*, 109 F.3d 1243 (7th Cir.1997).

The Court in *Lohr* could not ignore the "overarching" concern that *only particular* state requirements were preempted in that case, but even there, the Court acknowledged that general state requirements were subject to preemption where they threaten to interfere with a specific federal interest. *Id.* This is such a case. Here, not only do Niehoff's state law claims threaten the express federal interest in "maintaining optimum freedom for scientific investigators," but Niehoff's claims threaten the federal interest encouraging "the discovery and development of useful devices intended for human use." Niehoff's state law claims further threaten federal interest in exempting IDE devices from the general requirements of good manufacturing, misbranding, and performance. Niehoff's general state law claims threaten the federal interest in permitting the investigational use of devices to determine their safety and effectiveness. Finally, Niehoff's state law claims threaten the federal interest in "so thoroughly occupy[ing] a legislative field ... as to make reasonable the inference that Congress left no room for the states to supplement it." *Cipollone*, 505 U.S. at 516, 112 S.Ct. at 2617.

This is certainly an instance in which the legislative field has been thoroughly occupied by Congress. Here, Congress has authorized the FDA to exempt an IOL from its pre-market approval process, allowing the device to be implanted by a federally approved physician investigator, under the authority of a federally monitored clinical investigation, pursuant to the federal requirements contained in 21 U.S.C. § 360j and 21 C.F.R. § 813. Courts may infer Congress' intent to occupy a legislative field to the exclusion of state law "where the pervasiveness of the federal regulation precludes supplementation by the State, where the federal interest in the field is sufficiently dominant, or where 'the object sought to be obtained by the federal law and the character of obligations imposed by it ... reveal the same purpose.'" *Schneidewind v. ANR Pipeline Co.*, 485 U.S. 293, 300, 108 S.Ct. 1145, 1150, 99 L.Ed.2d 316 (1988), (quoting *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 229–31, 67 S.Ct. 1146, 1152, 91 L.Ed. 1447 (1947)). The pervasiveness of the federal regulations pertaining to the IOL, as well as the dominant express federal interest in protecting scientific freedom in order to encourage the development of medically sound devices, confirms Congress' intent to occupy the legislative field. Thus, only to the extent that Niehoff's state law claims are consistent with or substantially identical to the copious federal regulations that govern investigational IOL's may they coexist with federal requirements in this field.

## V.

As indicated by the Majority, the analysis by Justice Breyer in his concurring opinion is critical to the U.S. Supreme Court's decision

in *Lohr*, and helpful in disposing of this case. Justice Breyer joined the plurality in Parts I, II, III, V and VII of the Court's Opinion. *Lohr*, —— U.S. at ——, 116 S.Ct. at 2261. I agree with the Majority's reiteration of Justice Breyer's reasons for not joining Parts IV and VI of the Majority Opinion. I further agree that Justice Breyer reads 21 C.F.R. § 808.1(d) to require specific federal requirements in order to displace divergent state requirements by preemption. However, I cannot find any support in Justice Breyer's Opinion that would lead to the Majority's conclusion that

> the claims presented by Niehoff against Surgidev are similar to those presented by Lohr against Medtronic and are not precluded by the narrow specific approach to preemption referenced by the *Lohr* case.

Justice Breyer's concurring opinion answered two questions. First, Justice Breyer agreed that the MDA's preemption of state requirements easily reached to preempt state tort actions for damages. Second, Justice Breyer answered the question of whether the MDA preempted the particular state tort claims at issue in that case. Justice Breyer's preemption analysis in *Lohr* focused primarily on the requisite degree of specificity of the *federal* requirement, not the *state* requirement raised by the Petitioner in that case. For example, Justice Breyer observed that federal administrative agencies have leeway to determine which regulations will have preemptive effect. —— U.S. at ——, 116 S.Ct. at 2260. Also, Justice Breyer looked at the methods federal agencies can use to communicate their preemptive intent. Notably, Justice Breyer's quote from the FDA's preemption regulation was edited to exclude all of the references that described the specificity required for a *state* statute to be preempted by that section. Instead, Justice Breyer focused on the fact that the *federal* regula-

tions in *Lohr* were not specific enough to have the preemptive effect that the Respondent manufacturer in that case urged upon the court. Nonetheless, the Majority in this Court has read Justice Breyer's opinion to imply that a certain degree of specificity is required for *state* requirements to be preempted by the MDA. In my view, the Majority reads into Justice Breyer's words a view that is not expressed by his language, and it results in a conclusion on the preemptive effect of the MDA which is incorrect in the instant case.

## VI.

The conclusion that Niehoff's state common law product liability claims and negligence claims are preempted by the MDA, is supported by all the reported federal court decisions rendered since the Supreme Court's decision in *Lohr*.

The Majority dismisses the decision in *Berish v. Richards Medical Co.*, 937 F.Supp. 181 (N.D.N.Y.1996) without discussion as being "without merit." [2] Although the device in *Berish* was an IDE hip implant, and not an IOL, the court found that the general IDE regulations (21 C.F.R. § 812) "largely mirror" the IDE regulations relating to IOLs (21 C.F.R. § 813). The court cited the case of *Becker v. Optical Radiation Corp.*, 66 F.3d 18 (2nd Cir.1995), for its holding that state tort claims involving an investigational closed loop anterior chamber IOL were preempted because the MDA and the IOL regulations specifically exempt experimental IOLs from the safety and effectiveness standards usually imposed on medical devices. Applying the same reasoning to the investigational hip implant, the *Berish* court held that plaintiff's claims for defective design, warning and testing were preempted. The *Berish* court fur-

---

2. The majority states without elaboration that it is more persuaded by the Missouri Supreme Court's decision in *Connelly v. Iolab Corp.*, 927 S.W.2d 848 (Mo.1996). The Court in *Connelly* cites Part IV of the *Lohr* plurality's opinion, which was specifically disapproved by Justice Breyer, and it does so incorrectly. The Missouri Supreme Court incorrectly indicates that the *Lohr* plurality decided the § 360k exemption is *"limited"* to device specific enactments of posi-

tive law. In reality, the plurality in *Lohr* said that it read the language of § 360k to *"suggest ... that its focus* is device specific enactments of positive law...."* The plurality also said that

> the legislative history also confirms our understanding that § 360k simply was not intended to preempt most, let alone all, general common-law duties enforced by damages actions. *Lohr*, —— U.S. at ——, 116 S.Ct. at 2253.

ther found that this result was consistent with *Medtronic*, stating:

> This Court reads nothing in *Lohr* that compels a different conclusion. Unlike the § 510(k) devices that so troubled the *Lohr* court, IDEs are subject to regulations that "... set forth detailed procedures for determining whether [IDEs] are safe and effective." *Id.* Moreover, IDEs are subject to specific regulations promulgated for application, not generally to all devices, but to IDEs specifically. Finally, Congress has expressly exempted IDEs from certain regulations, as set forth above. Based on the foregoing, the Court can see no reason to reconsider its findings that the plaintiff's state common law claims sounding in negligence and strict products liability are preempted.

*Berish*, 937 F.Supp. at 185.

The Majority did not discuss the Sixth Circuit case of *Martin v. Telectronics Pacing Sys., Inc.*, 105 F.3d 1090 (6th Cir.1997), applying Ohio law. On remand from the United States Supreme Court in light of the *Lohr* decision, the Sixth Circuit in *Martin* held that all of Plaintiff's state common-law product liability claims against a pacemaker manufacturer were preempted. The *Martin* case contains an apt description of the distinction between the 20 hour process required to obtain "substantially equivalent" approval for devices to be marketed under the § 510(k) process, and the set of complex and comprehensive regulations which govern the IDE process. Declining the Plaintiff's invitation to re-characterize the approval process pertaining to the device at issue in *Martin*, the Court viewed the IDE process as dispositive in its determination that the Plaintiff's claims were preempted in that case. The Sixth Circuit's reasoning in *Martin* applies here.

The Majority also did not make reference to the Ninth Circuit's most recent post *Lohr* decision, *Papike v. Tambrands, Inc.*, 107 F.3d 737 (9th Cir.1997). The *Papike* opinion is significant for at least three reasons. First, it sheds further light on the question of whether state laws of "general applicability" can be preempted by the MDA. The *Papike* Court acknowledges that § 360k preempts state common law requirements

that are developed "with respect to" medical devices, and not those which merely describe a general duty. The plaintiff in *Papike* relies upon language from Part V of *Lohr* to argue that the generality of her tort claims leaves them outside the preemptive reach of § 360k. The Ninth Circuit Court explains, however, that

> [I]n Section V [of *Lohr*], the Court evaluates the specificity of the general state common-law requirements, **but only after concluding that the federal labeling and manufacturing requirements at issue were not specific to pacemakers....** [I]t is clear enough that the Court found no preemption of the common-law claims largely because the pacemaker was not subject to any device-specific FDA regulations. In addition, Section V acknowledges that the statutory and regulatory preemption language does not necessarily preclude "general" statements from ever being preempted.

*Papike*, 107 F.3d at 742.

The same analysis applies to this case. The federal labeling and manufacturing requirements at issue in *Lohr* were not specific to the device whereas the federal requirements at issue in this case, as in *Papike*, are highly specific to the IOL device. This distinction places Niehoff's claims in that category of general state requirements which are well *inside* the category of preempted state requirements despite their apparent generality.

*Papike* is also significant because it is a Ninth Circuit case. After *Slater*, and before *Lohr*, when virtually every jurisdiction held state law claims were preempted, Niehoff points out in her Brief that the Ninth Circuit "buck[ed] the preemption tide" in *Kennedy v. Collagen Corp.*, 67 F.3d 1453 (9th Cir.1995). Now, in *Papike*, the Ninth Circuit is again among the first courts to analyze *Lohr's* findings and holds that general state law claims, which actually conflict with specific and pervasive federal requirements, are preempted.

Finally, the *Papike* opinion is significant because it sheds significant light on Justice Breyer's separate opinion. Disposing of any remaining inclination to use Justice Breyer's

opinion as support for the view that state common-law actions of "general applicability" cannot be preempted, the *Papike* Court reasoned,

> it makes little sense to argue that Justice Breyer would write separately to make clear his position that duties arising under state common-law can constitute state law "requirements" which can be preempted by the MDA, and then agree that because tort law consists of generally applicable principles, it is always preempted, even in the face of specific federal requirements. Instead, in *Medtronic*, Justice Breyer found "no actual conflict between any federal requirement and any of the liability-creating-premises of the Plaintiffs' state law tort suit...." Here, there would be such a conflict.

*Id.* Here, as in *Papike*, there is conflict between specific federal requirements and the Appellant's state law tort suit.

In the most recently decided case of *Chambers v. Osteonics*, 109 F.3d 1243 (7th Cir.1997), the Seventh Circuit Court of Appeals held that

> claims for strict liability of breach of the implied warranty of merchantability "set up a direct collision with federal policy" because the FDA has already decided, rightly or wrongly, that a particular device can be sold, subject only a requirements, procedural in character and designed to assure that this experimental distribution was in fact a worthwhile experiment. Thus, these claims are preempted by the MDA because they impose requirements on Osteonics that are different from or greater than FDA requirements.

In so holding, the Court noted what many other courts have found that to allow state product liability claims would defeat the purpose of the investigational device exemption and impose liability on a manufacturer for an experimental device that meets all FDA standards and requirements.

Each of these post-*Lohr* decisions in my view persuasively support a conclusion that preemption of Niehoff's product liability claims is appropriate.

## VII.

There remains the issue whether Niehoff has negligence claims alleging that Surgidev violated the federal statute and regulations controlling its device which survive preemption. If she does, those claims solely would escape preemption because

> [t]he regulations promulgated by the FDA expressly support the conclusion that § 360k does not preempt state or local requirements that are equal to or substantially identical to, requirements imposed by or under the act.

*Lohr,* —— U.S. at ——, 116 S.Ct. at 2255 (quotations omitted). In addressing this issue, two questions are presented: (1) whether such claims have been properly preserved for review by this Court, and (2) whether such claims, if properly preserved, would impose requirements different from and in addition to federal law.

First, Niehoff's Complaint in Jefferson Circuit Court does not allege that Surgidev violated any specific federal law, whether it be a claim involving failure to warn, labeling or informed consent. Despite the absence in her Complaint of any such allegations, Niehoff's claims of Surgidev's violation of federal regulations were addressed by the Jefferson Circuit Court in its Opinion granting Partial Summary Judgment to Surgidev. In this Opinion, the lower court dismissed Niehoff's strict liability claim, her claim for punitive damages, and some but not all negligence claims that contended Surgidev violated federal regulations. Limited discovery followed, after which the trial court granted Summary Judgment, dismissing all of Niehoff's claims.

Niehoff appealed to the Kentucky Court of Appeals. With respect to the claimed violations of FDA regulations, the one and only claim addressed by the Court of Appeals was Niehoff's claim "that Surgidev failed to warn its investigators ... of data indicating that high complication rates accompanied the use of Style 10 lenses." The Court of Appeals held this claim to be preempted as it would "impose a separate and additional duty on manufacturers to notify investigators of any problems which accompany implantation."

Niehoff then filed a Petition for Discretionary Review before this Court. That Petition made no mention whatsoever to any alleged

failure by Niehoff to comply with any federal regulations. It was on the basis of that Petition that this Court granted her Discretionary Review.

Surgidev asserts in its Brief that Niehoff's claims based on violation of the FDA regulations are not properly before this Court. Niehoff's Brief before this Court contains no statement with reference to the record showing whether the issue of Surgidev's violation of federal laws was properly preserved for review and, if so, in what manner as called for under CR 76.12(4)(c)(iv).

The fact that Niehoff's Complaint contained no allegations that Surgidev violated any federal regulations, that her Petition for Discretionary Review did not raise any such issue, and that the requirements of CR 76.12(4)(c)(iv) have not been followed, when taken together support the correctness of Surgidev's position that such claims are not properly before this Court. It is unnecessary, however, to reach or to decide this potentially fatal procedural deficiency because I agree with the Court of Appeals' decision that Niehoff's failure to warn claims seek to impose a separate and additional duty on manufacturers to notify investigators and that this duty would impermissibly add to the existing notification and recall requirements under the applicable federal law. The same rationale would apply to dispose of Niehoff's informed consent and other negligence claims based on violations of the FDA regulations as presented in Appellant's Brief. As such, Niehoff's negligence claims based on Surgidev's alleged failure to comply with federal regulations would also be preempted.

## VIII.

Niehoff's state product liability and negligence claims would impose requirements on Surgidev that are different from or in addition to the requirements imposed by the MDA and the accompanying FDA regulations. For the reasons discussed, I believe all of Niehoff's state law claims are preempted, and I would affirm the decision of the Court of Appeals.